UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| **JEFFERY SALONE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 2:26-cv-01827** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RYDER INTEGRATED LOGISTICS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | **Jury Trial Demanded** |
| | ) | |

---

## COMPLAINT

Plaintiff, Jeffery Salone ("Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Ryder Integrated Logistics, Inc. ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., including 42 U.S.C. § 12203 (collectively, the "ADA"), seeking redress for Defendant's disability-based discrimination, disability-based harassment, failure to accommodate, and retaliation.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because Plaintiff's claims arise under the ADA, a federal statute. This Court is further vested with jurisdiction over Plaintiff's ADA claims pursuant to 42 U.S.C. § 12117(a).

3. Venue properly lies in the Eastern District of Wisconsin, Milwaukee Division, pursuant to 42 U.S.C. § 2000e-5(f)(3), as incorporated for ADA claims by 42 U.S.C. § 12117(a),

and 28 U.S.C. § 1391(b) because the unlawful employment practices alleged herein were committed in this District, Defendant operates and transacts business in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including at Defendant's Pleasant Prairie, Wisconsin facility.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to suit under the ADA have occurred or been satisfied.

5. On or about October 27, 2025, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), designated Charge No. 26G-2026-00103, which was cross-filed with the Wisconsin Department of Workforce Development, attached hereto as Exhibit "A."

6. On or about September 11, 2026, the EEOC issued, and Plaintiff received, a Notice of Right to Sue as to Charge No. 26G-2026-00103, attached hereto as Exhibit "B."

7. Plaintiff filed this Complaint within ninety (90) days of his receipt of the EEOC's Notice of Right to Sue.

## PARTIES

8. Plaintiff, Jeffery Salone, is an individual and resident of Lake County, Illinois.

9. Defendant, Ryder Integrated Logistics, Inc., is a Delaware corporation with its principal place of business located at 9800 72nd Avenue, Pleasant Prairie, Kenosha County, Wisconsin 53158.

10. At all times relevant, Plaintiff was an employee and Defendant was an employer within the meaning of the ADA.

11. At all times relevant, Defendant employed at least fifteen (15) employees and was a covered employer under the ADA.

## BACKGROUND FACTS

12. Plaintiff was employed by Defendant as a forklift operator from on or about July 27, 2025 until his termination on or about October 23, 2025.

13. As a forklift operator, Plaintiff's duties included but were not limited to operating a forklift, pulling and staging orders, and moving and loading warehouse freight.

14. Plaintiff met the obligations of his job duties. At no time during his employment did Defendant discipline, counsel, reprimand, or issue any performance warning to Plaintiff, and Defendant never communicated to Plaintiff any deficiency in his job performance.

15. Plaintiff suffers from a physical impairment, prostate cancer, which causes symptoms and limitations including bleeding upon exertion and the need to avoid heavy lifting and prolonged standing, to have restroom access, to sit when needed, and to take additional breaks.

16. Plaintiff's disability substantially limits one or more major life activities, including but not limited to normal cell growth and the operation of his genitourinary and bladder functions, as well as standing, lifting, and working, within the meaning of 42 U.S.C. § 12102(1)(A), (2)(A)–(B).

17. Plaintiff continued to operate a forklift and to pull and stage orders while observing his medical restrictions.

18. Plaintiff was willing and able to provide any additional medical documentation Defendant requested concerning his condition and restrictions.

19. Plaintiff informed his supervisors and Defendant's Human Resources personnel of his diagnosis and medical restrictions and submitted written accommodation documentation.

20. Plaintiff asked Defendant to limit his lifting to no more than twenty (20) pounds and to allow him restroom access, the ability to sit when needed, limited standing, and additional breaks.

21. Defendant did not discuss with Plaintiff whether his restrictions could be met in his forklift operator position, did not request updated documentation before removing him from work, and did not implement any of the restrictions he identified. Plaintiff's accommodation request would have enabled him to perform the essential functions of his forklift operator position.

22. Plaintiff asked Defendant for the restrictions described above and reported to Defendant's Human Resources personnel that he was being kept out of work because of his medical condition.

23. Defendant removed Plaintiff from his job duties, placed him on involuntary unpaid leave, and terminated his employment.

24. On or about July 27, 2025, Defendant hired Plaintiff to work as a forklift operator at its Pleasant Prairie, Wisconsin facility.

25. On or about August 17, 2025, approximately three weeks into his employment, Plaintiff informed his supervisor, James, whose last name is presently unknown to Plaintiff ("James"), of his prostate cancer diagnosis. James initially stated that the diagnosis would not be an issue and allowed Plaintiff to continue working.

26. On or about August 18, 2025, without any request from Plaintiff, James reassigned Plaintiff to forklift operation only and stated that he could not have Plaintiff working outside after learning of his diagnosis.

27. On or about August 19, 2025, Plaintiff informed another supervisor, Michelle, whose last name is presently unknown to Plaintiff ("Michelle"), that he was restricted to forklift work due to his medical condition, and explained that lifting heavy boxes was causing him to bleed. Michelle acknowledged Plaintiff's condition and instructed him to report it to Human Resources, which Plaintiff did.

28. On or about August 20, 2025, Plaintiff notified Defendant's Human Resources representative, Jessica, whose last name is presently unknown to Plaintiff ("Jessica"), of his condition and submitted an accommodation letter from a former employer outlining the following restrictions: no lifting over twenty (20) pounds, restroom access, the ability to sit when needed, limited standing, and additional breaks.

29. On or about August 20, 2025, rather than engaging in an interactive process or requesting updated documentation, which Plaintiff was willing and able to provide, Human Resources informed Plaintiff that he could not return to work until his accommodations were formally approved by Defendant's board. Plaintiff last performed work for Defendant on or about August 20, 2025, and was not permitted to return to work at any time thereafter.

30. After being removed from active work, Plaintiff continued to report to Defendant by text message or telephone every Wednesday through Saturday, as instructed, to confirm that he was still awaiting approved accommodations.

31. On or about September 15, 2025, Human Resources emailed Plaintiff stating that it was still reviewing his accommodations.

32. On or about September 30, 2025, Plaintiff followed up with Endia, a Human Resources representative whose last name is presently unknown to Plaintiff ("Endia"), submitting an updated accommodation letter that removed the "limited standing" restriction and requested only no lifting over twenty (20) pounds and breaks as needed. Plaintiff expressed his ability and willingness to resume operating the forklift and pulling orders, as he was fully capable of performing the same duties he had performed before while respecting these restrictions.

33. Endia responded that she would coordinate with management to find a position matching Plaintiff's restrictions or otherwise place him on leave; however, no resolution or assignment was offered.

34. On or about October 15, 2025, Plaintiff contacted Endia by email and telephone to ask why he could no longer operate the forklift, and he received no response. On or about October 21, 2025, Plaintiff followed up again by email.

35. On or about October 23, 2025, Defendant informed Plaintiff that it was unable to provide accommodations, advised him to apply for Short-Term Disability, and terminated his employment.

36. Since his termination, Plaintiff has continued to suffer ongoing harm, including stress, anxiety, sleeplessness, depression, humiliation, and fear about his financial and medical security, as well as aggravation of the physical symptoms of his condition resulting from the loss of his income and employment-based benefits during his cancer treatment.

**COUNT I**
**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a)**
**(Disability-Based Discrimination)**

37. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

38. Plaintiff was disabled within the meaning of the ADA and was qualified to perform the essential functions of his position with or without reasonable accommodation.

39. Plaintiff met the obligations of his job duties.

40. Defendant subjected Plaintiff to adverse actions because of Plaintiff's disability, including reassigning him away from his assigned duties, removing him from all work, placing him on involuntary unpaid leave, and terminating his employment.

41. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff because of his disability in violation of the ADA, 42 U.S.C. § 12101 et seq.

42. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

43. As a direct and proximate result, Plaintiff suffered and continues to suffer lost wages and benefits, emotional pain and suffering, humiliation, and other compensatory damages, to the extent authorized by law.

**COUNT II**
**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a)**
**(Disability-Based Harassment)**

44. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

45. Defendant subjected Plaintiff to disability-based harassment because of his disability, including the specific conduct described herein.

46. Defendant reassigned Plaintiff away from his duties immediately after learning of his cancer diagnosis and told him he could not work outside because of his diagnosis.

47. Defendant removed Plaintiff from all work and placed him on indefinite involuntary unpaid leave rather than engaging in the interactive process.

48. Defendant required Plaintiff to report by text message or telephone four days each week, for weeks on end, merely to confirm that he remained excluded from work.

49. Defendant repeatedly ignored Plaintiff's inquiries about returning to work before advising him to apply for short-term disability and terminating his employment.

50. The disability-based harassment was unwelcome and was subjectively and objectively offensive.

51. The disability-based harassment was severe or pervasive.

52. Defendant knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

53. By virtue of the conduct alleged herein, Defendant harassed Plaintiff because of his disability in violation of the ADA, 42 U.S.C. § 12101 et seq.

54. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

55. As a direct and proximate result, Plaintiff suffered and continues to suffer lost wages and benefits, emotional pain and suffering, humiliation, and other compensatory damages, to the extent authorized by law.

**COUNT III**
**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5)(A)**
**(Failure to Accommodate)**

56. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

57. Plaintiff was a qualified individual with a disability.

58. Defendant was aware of Plaintiff's disability and need for reasonable accommodation.

59. Plaintiff requested the reasonable accommodation of restrictions on heavy lifting (including no lifting over twenty (20) pounds), restroom access, the ability to sit when needed, limited standing, and additional breaks.

60. Plaintiff's requested accommodation would have enabled him to perform the essential functions of his position.

61. Defendant failed to engage in the interactive process and failed to provide Plaintiff a reasonable accommodation.

62. By virtue of the conduct alleged herein, Defendant failed to accommodate Plaintiff's disability in violation of the ADA, 42 U.S.C. § 12101 et seq.

63. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

64. As a direct and proximate result, Plaintiff suffered and continues to suffer lost wages and benefits, emotional pain and suffering, humiliation, and other compensatory damages, to the extent authorized by law.

## COUNT IV
## Violation of the Americans with Disabilities Act, 42 U.S.C. § 12203(a)
## (Retaliation)

65. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

66. Plaintiff engaged in protected activity under the ADA by requesting a reasonable accommodation and reporting disability discrimination.

67. Defendant knew that Plaintiff engaged in protected activity.

68. Defendant subjected Plaintiff to adverse actions, including removing him from his duties, placing him on indefinite involuntary unpaid leave, and terminating his employment.

69. Plaintiff's protected activity was a but-for cause of Defendant's adverse employment actions.

70. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff in violation of the ADA, 42 U.S.C. § 12203.

71. As a direct and proximate result, Plaintiff suffered and continues to suffer loss of employment, income, and benefits, and is entitled to back pay, front pay and/or reinstatement, and such other equitable relief as is authorized by law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and award the following relief:

a. Back pay and other lost compensation;

b. Payment of interest on all recoverable back pay and other monetary losses;

c. Reinstatement or, in the alternative, front pay;

d. Lost employment benefits;

e. Compensatory damages on Counts I through III, including damages for emotional distress, humiliation, and mental anguish, to the extent authorized by law;

f. Punitive damages on Counts I through III to the extent authorized by law;

g. Appropriate declaratory and equitable relief;

h. Reasonable attorneys' fees and costs to the extent authorized by law;

i. Prejudgment and post-judgment interest to the extent authorized by law; and

j. Any other relief that the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 2, 2026.

***/s/ Kelly Dean Pearce, Esq.***

Kelly Dean Pearce, Esq.
Yasmeen Elagha, Esq.
Mohammed O. Badwan, Esq.
Atlas Law Center, Ltd.
2500 South Highland Avenue,
Suite 200,
Lombard, Illinois 60148
Phone (630) 575-8181
Fax (630) 575-8188
dpearce@atlaslawcenter.com
yelagha@atlaslawcenter.com
mbadwan@atlaslawcenter.com

*Attorneys for Plaintiff*